UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CR No. 08-053-02ML |
| : | CR No. 08-053-03ML |
| ALBERT R. MARTIN and : | |
| LORRAINE A. MARTIN : | |

**MEMORANDUM AND ORDER**

On March 30, 2009, the jury returned guilty verdicts against Albert Martin and Lorraine Martin, and their Co-Defendant Bruce LaPierre, on all counts. Specifically, Mr. Martin was found guilty beyond a reasonable doubt of one count of conspiracy to defraud the United States of America of federal income taxes and two counts of federal income tax evasion. The tax evasion counts charge that Mr. Martin had taxable income of approximately $74,911.00 in 2002 and $72,622.00 in 2003 and paid no federal income taxes for those years. Mrs. Martin was also found guilty on the conspiracy charge and independently of aiding and abetting her husband's 2002 and 2003 federal income tax evasion.

On June 19, 2008, the Martins first appeared in this case for an Initial Appearance, Arraignment and Bail Hearing. Based on Financial Affidavits signed by each of them under penalty of perjury, I found the Martins to be financially eligible for court-appointed counsel, and they were each provided court-appointed counsel at taxpayer expense from that date, throughout trial and continuing to the present.

On April 1, 2009, Chief Judge Lisi issued an Order regarding the issue of the Martins' financial eligibility for court-appointed counsel. She noted that the evidence introduced at trial revealed that Mr. Martin operated a machine shop with Co-Defendant Bruce LaPierre since 1995,

that Mr. Martin earned a total of $685,952.00 in net profit from the machine shop for the period 1997 through 2003, and a net profit of $95,601.00 in 2002 and $100,983.00 in 2003. Chief Judge Lisi also examined certain entries on the Martins' June 19, 2008 Financial Affidavits such as Mrs. Martin's representation that her husband was not employed, and Mr. Martin's failure to answer the question asking if he was employed and his vague response as to income. Based on this information, she referred the question of the Martins' financial eligibility for court-appointed counsel to me for further consideration under 18 U.S.C. § 3006A(c).

**Discussion**

The Sixth Amendment of the United States Constitution provides a criminal defendant with the right to "assistance of counsel for his defense." Rule 5(d)(1)(B), Fed. R. Crim. P., requires that, at a defendant's initial court appearance on a felony charge, the court inform the defendant of his "right to retain counsel or to request that counsel be appointed if the defendant cannot obtain counsel." Each District Court must have "a plan for furnishing representation for any person [charged with a felony] financially unable to obtain adequate representation." 18 U.S.C. § 3006A(a). Local Rule CR 44(a) provides that, if the Court determines that the defendant is financially unable to retain private counsel, it shall appoint the Federal Defender or an attorney on the Court's Criminal Justice Act Panel (a "CJA Attorney") to represent the defendant at no cost. However, if the Court later determines that a defendant has assets from which to pay attorneys' fees, it may, "at any time," order the defendant to pay all or any portion of any attorneys' fees incurred. Local Rule CR 44(a)(3); 18 U.S.C. §§ 3006A(c), (f).

Although the burden of establishing financial eligibility for court-appointed counsel is on the defendant, that burden does not require a showing of complete indigency or destitution. See

United States v. Santiago-Fraticelli, 818 F. Supp. 27, 29-30 (D.P.R. 1993).  As a practical matter, criminal defense counsel who are able to adequately handle felony cases in Federal Court require a substantial up-front payment of fees or a "retainer" before they will enter an appearance as defense counsel.  Thus, in considering requests for court-appointed counsel, the Court must consider liquid assets at the time of initial appearance as well as total assets, income and expenses.

In this case, although the issues of income and employment were cloudy, both of the Martins unequivocally swore to holding cash of only $100.00 and a 1997 Chevy valued at $2,000.00.  Based on that information, the Martins were approved for court-appointed counsel.  In making my determination, I balanced the ambiguities in their Financial Affidavits with the Martins' presumption of innocence, the Sixth Amendment right to counsel, and the Fifth Amendment self-incrimination implications of disclosing income, earnings or assets in an income tax evasion prosecution.  On balance, and based on the limited information before me at that time, I found that the Martins were financially eligible for court-appointed counsel.

In furtherance of Chief Judge Lisi's Order, a Chambers conference was held on April 17, 2009 and, on April 24, 2009, I issued an Order requiring the Martins to submit Supplemental Financial Affidavits as follows:

> consistent with Form CJA23, provide detailed information as to their ability to pay for counsel from June 19, 2008 (the date of their initial appearances and the Court's appointment of counsel to represent them under the Criminal Justice Act) to the present.  Each Affidavit shall include specific information regarding "income," assets, debts and expenses.  As to "income," the Martins are not constrained to that label but shall, in whatever name used, disclose their business or employment wages, salary, earnings, cash receipts, revenue and/or proceeds.

Both of the Martins made timely submissions to the Court.[1] However, in both cases, I find that their submissions are deficient. First, although titled Supplemental Financial Affidavit, Mrs. Martin's submission is an unsworn statement that largely parrots what was set forth in her original Financial Affidavit. Mr. Martin submitted an Amended Financial Affidavit which is sworn to under penalty of perjury. However, it provides only limited information. As to the question, "have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest dividends, retirement or annuity payments, or other sources?", Mr. Martin reversed his prior sworn answer of no to a yes. He then indicates that "[t]o the best of my knowledge and belief, I estimate that from January 2008 through June 19, 2008, I received approximately $23,000.00 in United States currency for personal labor." Mr. Martin provides no additional information regarding assets, debts and expenses.

The Martins have not met their burden of establishing financial inability to retain adequate defense counsel. It is difficult to reconcile the Martins' limited financial disclosures with their tax evasion convictions and the trial evidence. As noted by Chief Judge Lisi in her April 1, 2009 Order, such trial evidence revealed that Mr. Martin earned substantial net profits from his machine shop from 1997 through 2003. The Martins did not report owning any real estate and have resided long-term in an apartment with monthly rent of less than $500.00. They also report no automobiles or other personal property of value. They had debt extinguished in a 1991 bankruptcy proceeding.

Viewing the totality of the circumstances, I do not find the Martins' financial disclosures to be sufficiently detailed and credible to meet their burden of establishing entitlement to court-

---

[1] The Government was also ordered to identify trial exhibits which reflect Mr. Martin's net profit from the machine shop and otherwise reflected on the Martins' ability to pay for counsel. The Government did so by letter dated May 13, 2009.

appointed counsel.  First, the Martins' original Financial Affidavits contained misleading responses.  Mrs. Martin reported that her husband was not employed, and she reported no income whatsoever.  Mr. Martin refused to answer the question as to employment and also reported no "other income."  While he did mention the machine shop, he offered no specifics as to earnings other than to say "varies – generates enough to live on."  Although Mr. Martin's Amended Financial Affidavit did not offer much additional specific information as to earnings and expenses, it did make clear that his response as to "other income" in his original Financial Affidavit was inaccurate.  Mrs. Martin chose to submit an unsworn Supplemental "Affidavit" which is of little value in this examination.

In view of their convictions and the evidence introduced at trial as to Mr. Martin's historical net profits from the machine shop, it was incumbent upon the Martins to provide a clear and detailed picture of their earnings and expenses during the relevant period.  They have not.  Again, it is difficult to reconcile the net profits from the machine shop attributed to Mr. Martin with the Martins' financial disclosures.  They have reported relatively little in terms of assets held and report modest living expenses.  The Martins have neither rebutted the evidence showing net profits from the machine shop nor identified living or other expenses which would reasonably have consumed such profits.  See United States v. Santiago-Fraticelli, 818 F. Supp. at 30 ("circumstantial evidence may certainly be used by a court in determining a defendant's financial status.").

**Conclusion**

For the foregoing reasons, I find that the Martins have not met their burden of establishing financial eligibility for court-appointed counsel.  Thus, I ORDER that Albert Martin and Lorraine

Martin each individually pay to the Clerk as reimbursement for the cost of court-appointed counsel the current CJA maximum case compensation amount of $8,600.00.  18 U.S.C. § 3006A(d)(2).[2]

SO ORDERED



  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 24, 2009

---

[2] At the current CJA hourly rate of $110.00, the CJA maximum reflects approximately seventy-eight hours of attorney time which was easily exceeded during the proceedings to date in this case including the nine-day jury trial. Further, cost for privately retained counsel for such a case would have easily doubled or tripled the CJA maximum.